# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAGE CHEMICAL, INC. AND TRUPHARMA, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SUPERNUS PHARMACEUTICALS, INC., BRITANNIA PHARMACEUTICALS LIMITED, US WORLDMEDS PARTNERS, LLC, MDD US ENTERPRISES, LLC (F/K/A USWM ENTERPRISES, LLC), MDD US OPERATIONS, LLC (F/K/A US WORLDMEDS, LLC), USWM, LLC, PAUL BRECKINRIDGE JONES, HERBERT LEE WARREN, JR., HENRY VAN DEN BERG, AND KRISTEN L. GULLO,<br><br>Defendants. | Civil Action No. 22-1302-CFC |

## OPENING BRIEF IN SUPPORT OF THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

Eric J. Stock (*pro hac vice*)
Shireen A. Barday (*pro hac vice*)
Nathan C. Strauss (*pro hac vice forthcoming*)
Joshua J. Obear (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
estock@gibsondunn.com
sbarday@gibsondunn.com
nstrauss@gibsondunn.com
jobear@gibsondunn.com

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Defendants Paul Breckinridge Jones, Sr., Herbert Lee Warren, Jr., Henry van den Berg, and Kristen L. Gullo*

Dated: January 10, 2023

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ...................................................................................................2

ARGUMENT .........................................................................................................................3

   I.   Plaintiffs Fail To Plead Facts Supporting Personal Jurisdiction Or Venue With Respect To The Individual Defendants. .........................................................3

      A.  Personal Jurisdiction.................................................................................3

      B.  Venue.........................................................................................................6

   II.  Plaintiffs Fail To State A Claim For Individual Liability Under The Antitrust Laws...........................................................................................................7

CONCLUSION ....................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brasure's Pest Control, Inc. v. Air Cleaning Equip., Inc.*,
  2017 WL 3269082 (D. Del. Aug. 1, 2017) ............................................................. 4

*Brown v. Donco Enters., Inc.*,
  783 F.2d 644 (6th Cir. 1986) .............................................................................. 11

*Bus. Elecs. Corp. v. Sharp Elecs. Corp.*,
  485 U.S. 717 (1988) ....................................................................................... 8, 10

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ......................................................................................... 4, 6

*Deutscher Tennis Bund v. ATP Tour, Inc.*,
  610 F.3d 820 (3d Cir. 2010) .............................................................................. 11

*Deutscher Tennis Bund v. ATP Tour, Inc.*,
  No. 1:07-cv-00178-GMS (D. Del. Oct. 8, 2009) ............................................ 9, 10

*Eichorn v. AT&T Corp.*,
  248 F.3d 131 (3d Cir. 2001) .............................................................................. 10

*Eisai, Inc. v. Sanofi Aventis U.S., L.L.C.*,
  821 F.3d 394 (3d Cir. 2016) ................................................................... 8, 10, 14

*First Solar, Inc.*,
  2013 WL 4051739 (D. Del. July 12, 2013) ......................................................... 7

*Forest Lab'ys Inc. v. Cobalt Lab'ys Inc.*,
  2009 WL 605745 (D. Del. Mar. 9, 2009) ............................................................ 6

*Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*,
  516 F. Supp. 2d 324 (D. Del. 2007) .................................................................... 7

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
  551 U.S. 877 (2007) ............................................................................................ 8

*Marten v. Godwin*,
  499 F.3d 290 (3d Cir. 2007) ............................................................................ 5, 6

*Murphy Tugboat Co. v. Shipowners & Merchs. Towboat Co.*,
   467 F. Supp. 841 (N.D. Cal. 1979) ................................................................................ 9

*N. Pac. Ry. Co. v. United States*,
   356 U.S. 1 (1958) ............................................................................................................ 8

*President Reach & Assocs., P.C. v. Dencer*,
   269 F. Supp. 2d 497 (D. Del. 2003) ................................................................................ 7

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) ........................................................................................................ 12

*In re Se. Milk Antitrust Litig.*,
   801 F. Supp. 2d 705 (E.D. Tenn. 2011) .................................................................. 11, 14

*Thompson v. Roman Cath. Archbishop of Wash.*,
   735 F. Supp. 2d 121 (D. Del. 2010) ................................................................................ 4

*United States v. U.S. Gypsum Co.*,
   438 U.S. 422 (1978) ........................................................................................................ 9

*Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*,
   75 F.3d 147 (3d Cir. 1996) .............................................................................................. 4

*In re Wellbutrin XL Antitrust Litig.*,
   2012 WL 1657734 (E.D. Pa. May 11, 2012) ................................................................ 12

*ZF Meritor, L.L.C. v. Eaton Corp.*,
   696 F.3d 254 (3d Cir. 2012) .......................................................................................... 14

**Statutes**

15 U.S.C. § 22 .......................................................................................................................... 7

28 U.S.C. § 1391 ...................................................................................................................... 7

Pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), Defendants Paul Breckinridge Jones, Sr., Herbert Lee Warren, Jr., Henry van den Berg, and Kristen L. Gullo (the "Individual Defendants") move to dismiss the Amended Complaint ("Complaint").

## PRELIMINARY STATEMENT

In this antitrust case, Plaintiffs seek to sue not only a competing business but also former employees of that business. The Individual Defendants, prior to June 2020, were employed by US WorldMeds, LLC ("US WorldMeds Operations" or "USWMO"). At that time, USWMO managed the Apokyn® business. The Individual Defendants left their positions at USWMO when that entity and its parent company, including the Apokyn® business, were sold to Defendant Supernus Pharmaceuticals ("Supernus"). The Individual Defendants have not been involved with managing the Apokyn® business since that sale two and a half years ago, and they now work at different companies that use the "US WorldMeds" brand name.

Plaintiffs are suing the Individual Defendants for their alleged conduct while employed by USWMO prior to June 2020. It is unusual for a plaintiff to name individual employees of its competitor as defendants in an antitrust case—and even more unusual to sue the *former employees* of one's competitor. No individuals currently working in the Apokyn® business have been named in this lawsuit, even though much of the alleged anticompetitive conduct took place after June 2020. It

thus appears that Plaintiffs have sued the Individual Defendants as part of an effort—for personal grievances or otherwise—to ensure that the previous shareholders and employees of their competitor are involved with this lawsuit.

All Defendants are concurrently filing an Omnibus Motion to Dismiss raising issues common to Defendants, and those bases for dismissal apply to the Individual Defendants as well (and are incorporated herein by reference). In this brief, the Individual Defendants explain that the Complaint must also be dismissed against them for: (1) lack of personal jurisdiction; (2) improper venue; and (3) failure to state a claim for individual liability under the antitrust laws.

## STATEMENT OF FACTS

Defendant Paul Breckinridge "Breck" Jones, Sr., is an entrepreneur based in Louisville, Kentucky. In 2001, he founded a specialty pharmaceutical company under the brand name "US WorldMeds." Prior to the sale of USWMO and certain affiliates to Supernus, the Individual Defendants had the following positions at USWMO, which was then based in Kentucky (Compl. ¶¶ 40, 42, 52):

| Mr. Jones | CEO |
| --- | --- |
| Mr. Warren | COO |
| Mr. van den Berg | Senior VP |
| Ms. Gullo | VP of Development and Regulatory Affairs |

On June 9, 2020, Supernus completed its acquisition of the equity of USWM

Enterprises, LLC, the indirect parent company of USWMO, and thus acquired the Apokyn® business. *Id.* ¶¶ 40, 154. At that time, the Individual Defendants left their employment at USWMO and ceased managing the Apokyn® business. *See id.* ¶ 52. Supernus subsequently renamed the sold entities, eliminating their use of the US WorldMeds brand name. *Id.* ¶ 43. In addition, new companies were set up to operate businesses that were *not* part of the sale to Supernus, and these entities received the right to use the US WorldMeds brand name. *Id.* ¶¶ 44, 52, 57. The Individual Defendants now work at one of those new companies, and continue to reside in Kentucky or elsewhere outside of Delaware. Compl. Ex. D.

Plaintiffs' allegations are described in more detail in the Omnibus Motion to Dismiss. Among other things, Plaintiffs allege that USWMO and/or its affiliates, prior to the sale, (1) entered into "exclusionary" agreements with third parties, and (2) filed citizen petitions with the FDA that were anticompetitive "shams." Compl. ¶¶ 5, 135-36. Plaintiffs attempt to bring the Individual Defendants into this lawsuit based on extremely limited and conclusory allegations of how these individuals participated in that conduct.

## ARGUMENT

I.  **Plaintiffs Fail To Plead Facts Supporting Personal Jurisdiction Or Venue With Respect To The Individual Defendants.**

   A.  **Personal Jurisdiction**

Because the Individual Defendants live and work outside of Delaware, and

3

are not alleged to have engaged in any relevant conduct in Delaware, they are not subject to personal jurisdiction here. *See* Compl. Ex. D. To force the Individual Defendants to come to Delaware to defend this lawsuit, Plaintiffs must "establish[], with reasonable particularity, that sufficient minimum contacts have occurred between the defendant and the forum to support jurisdiction." *Thompson v. Roman Cath. Archbishop of Wash.*, 735 F. Supp. 2d 121, 126 (D. Del. 2010).

Plaintiffs do not plead general jurisdiction over the Individual Defendants,[1] so the issue here is specific jurisdiction. There is none, because Plaintiffs fail to plead that any of the Individual Defendants "purposefully directed its activities at residents of the forum." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996). Moreover, under the fiduciary shield doctrine, the conduct of the Individual Defendants' *employer* in Delaware cannot be attributed to the Individuals. *See Brasure's Pest Control, Inc. v. Air Cleaning Equip., Inc.*, 2017 WL 3269082, at *4 (D. Del. Aug. 1, 2017) (actions by individual defendants' employer in Delaware not attributable to company officers in North Carolina).

Plaintiffs base personal jurisdiction on allegations that the Individual Defendants engaged in "intentional conduct directing and/or participating in actions that restrained and excluded generic competition, increased prices, and harmed

---

[1] General jurisdiction over individuals is based on "the individual's domicile." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

consumers and Plaintiffs in Delaware, including TruPharma, a company organized under Delaware law." Compl. ¶ 73. Given the lack of alleged conduct by the Individual Defendants within Delaware, Plaintiffs appear to be arguing for the "effects test." That doctrine allows specific jurisdiction over a defendant based on out-of-forum conduct where it was "expressly aimed" at the forum, such that the forum can be deemed the "focal point of the [alleged wrongful] activity." *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007).

Plaintiffs do not satisfy the effects test. They make no allegations the Individual Defendants "expressly aimed" conduct at Delaware or "manifest[ed] behavior intentionally targeted at and *focused on*" Delaware. *Id.* at 298 (emphasis added). Plaintiffs, indeed, concede the challenged conduct was not "focused on" Delaware; they instead claim the Individual Defendants directed entities to restrain competition in the country more broadly—"*including in part* in the State of Delaware." Compl. ¶ 73 (emphasis added). But allegations that a person aimed conduct at the nation as a whole does not subject such person to jurisdiction in every district in the nation. *See Daimler*, 571 U.S. at 139; *Marten*, 499 F.3d at 298 (finding no Pennsylvania jurisdiction over non-residents that did not "expressly aim" conduct at Pennsylvania).

Nor does the fact that one of the *Plaintiffs* was incorporated in Delaware matter. Plaintiffs make no allegations that the Individual Defendants *knew* the

5

identity of potential generic Apokyn® competitors, and, moreover, the Plaintiff seeking approval for generic Apokyn®—Sage—is incorporated and based in New Jersey. Compl. ¶ 33; *Marten*, 499 F.3d at 298. The second Plaintiff, TruPharma, appears to be merely a marketing partner *selected by Sage*—and, although incorporated in Delaware, based in Florida. Compl. ¶ 34. Such tenuous connections do not raise an inference of conduct "expressly aimed" at Delaware. *Marten*, 499 F.3d at 298.

Plaintiffs also assert personal jurisdiction based on the mere fact that one agreement Plaintiffs challenge included a Delaware choice-of-law clause. Compl. ¶ 73. But "Delaware courts have refused to base personal jurisdiction solely on the existence of such a choice of law provision." *Forest Lab'ys Inc. v. Cobalt Lab'ys Inc.*, 2009 WL 605745, at *8 (D. Del. Mar. 9, 2009). Moreover, there are no specific allegations that van den Berg or Gullo had anything to do with that agreement.[2]

### B. Venue

Plaintiffs similarly fail to allege facts showing venue is proper in this District. Section 12 of the Clayton Act only applies to corporations, 15 U.S.C. § 22, so Plaintiffs must rely upon the general venue statute, 28 U.S.C. § 1391. Compl. ¶ 74.

---

[2] Nor does mere employment by a Delaware corporation automatically subject all of that company's employees nationwide to jurisdiction in Delaware. *See President Reach & Assocs., P.C. v. Dencer*, 269 F. Supp. 2d 497, 503 (D. Del. 2003).

But as explained above, Plaintiffs do not allege facts indicating that a "substantial part of the events or omissions giving rise to the claim[s]" *against the Individual Defendants* occurred in Delaware. 28 U.S.C. § 1391(b)(2); *see also First Solar, Inc.*, 2013 WL 4051739, at *2 n.1 (D. Del. July 12, 2013) (dismissing complaint for improper venue because the individual defendants, directors of a Delaware company, "performed [their] roles primarily in Arizona").

Accordingly, dismissal is appropriate under Rule 12(b)(3). *See First Solar*, 2013 WL 4051739, at *2 n.1; *Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 516 F. Supp. 2d 324, 338-40 (D. Del. 2007), *aff'd*, 602 F.3d 237 (3d Cir. 2010) (dismissing antitrust claims against non-Delaware defendants under both 12(b)(2) and 12(b)(3)).

## II. Plaintiffs Fail To State A Claim For Individual Liability Under The Antitrust Laws.

The Amended Complaint must also be dismissed as against the Individual Defendants because Plaintiffs do not plead the type of conduct that can result in personal liability under the antitrust laws for individuals carrying out their jobs at their employer's business.

Alleged anticompetitive conduct is generally analyzed under one of two legal standards. First, conduct that can be immediately recognized as unlawful regardless of effect is considered "per se" unlawful. *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007). An example is price-fixing. *See N. Pac.*

7

*Ry. Co., v. United States*, 356 U.S. 1, 5 (1958). Second, other anticompetitive conduct is reviewed under the "rule of reason," where the legality of the conduct is dependent on its overall competitive effect. *See Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 723, 726 (1988). Exclusive dealing is an example of the latter because exclusive contracts can sometimes be procompetitive, and sometimes not, depending on market circumstances. *See Eisai, Inc. v. Sanofi Aventis U.S., L.L.C.*, 821 F.3d 394, 403 (3d Cir. 2016).

Courts recognize that there are only limited circumstances where it is appropriate to hold an employee of a company civilly liable for his or her role in the company's violation of the antitrust laws. In one leading authority, *Murphy Tugboat*, the court expressed concern with an overly broad rule of individual liability because antitrust law encourages vigorous competition and "the behavior proscribed by the [Sherman] Act is often difficult to distinguish from the gray zone of socially acceptable and economically justifiable business conduct." *Murphy Tugboat Co. v. Shipowners & Merchs. Towboat Co.*, 467 F. Supp. 841, 853 (N.D. Cal. 1979) (quoting *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 438 (1978)).

Because of "[t]he generality of the [Sherman] Act's prohibition, the often uncertain line between proper and improper conduct, and the social interest in not deterring economically useful conduct by the imposition of excessive risks," the court in *Murphy Tugboat* concluded that it was "appropriate to limit personal

[antitrust] liability to cases of participation in *inherently wrongful conduct*." *Murphy,* 467 F. Supp. at 853 (emphasis added). Judge Sleet in this District followed *Murphy Tugboat* in *Deutscher*, holding that "personal civil liability for antitrust violations is limited to participation in inherently unlawful acts, that is, a per se violation of antitrust law." Transcript at 2360, *Deutscher Tennis Bund v. ATP Tour, Inc.*, No. 1:07-cv-00178-GMS, (D. Del. Oct. 8, 2009) (annexed as Exhibit 1).

The decisions in *Murphy Tugboat* and *Deutscher* make good sense. Where conduct is governed by the "rule of reason," the legality of that conduct will not be obvious to any particular employee—it depends on many market factors, including a court's subsequent analysis of overall competitive effects—and information known exclusively by competitors and customers. *See Bus. Elecs.*, 485 U.S. at 723. It would be unfair to hold employees liable for potentially massive liabilities for conduct allegedly undertaken by their employer. Indeed, *Deutscher* is illustrative. There, Judge Sleet found the rule of reason applicable because liability turned on the "complexity" of the contracts at issue, the "peculiar nature" of the industry, and the "ambiguity of the bounds of the relevant market." Ex. 1 at 2360-61. Because liability required a "detailed examination of the industry in question, . . . the individuals' conduct was not the type of inherently wrongful activity that gives rise to personal liability under antitrust law." *Id.* at 2361-62.

Similarly, Plaintiffs here fail to allege the Individual Defendants engaged in

"per se" violations.  Exclusive dealing and citizen petitions are subject to the rule of reason because neither falls into a category of "per se" unlawful conduct.  *See, e.g.*, *Eisai*, 821 F.3d at 394, 403; *Eichorn v. AT&T Corp.*, 248 F.3d 131, 138 (3d Cir. 2001), *as amended* (June 12, 2001) ("For those activities not within the per se invalidity category, courts employ the rule of reason test.").

Some courts outside this Circuit have adopted a broader standard for personal liability under the antitrust laws, allowing individual liability where there is a showing of an individual's "active and knowing participation" in a violation.[3]  *See, e.g.*, *Brown v. Donco Enters., Inc.*, 783 F.2d 644, 646 (6th Cir. 1986) (limiting individual antitrust liability to situations in which "corporate agents are actively and knowingly engaged" in anticompetitive conduct).  Plaintiffs do not meet that standard either.  To state a claim under that standard, Plaintiffs must allege each Individual Defendant acted *beyond those expected in her or his job role*, to "exert[] his influence so as to shape corporate intentions" towards anticompetitive aims.  *Id.*; *see also In re Se. Milk Antitrust Litig.*, 801 F. Supp. 2d 705, 739 (E.D. Tenn. 2011) (granting summary judgment because no showing CFO acted beyond scope of his ordinary responsibilities).

**Mr. van den Berg and Ms. Gullo.**  With respect to the less senior employees,

---

[3] In addition, on appeal the Third Circuit in *Deutcher* questioned the "persuasive value" of *Murphy Tugboat* but did not decide the issue.  *See Deutscher Tennis Bund v. ATP Tour, Inc.*, 610 F.3d 820, 833 n.8 (3d Cir. 2010).

van den Berg and Gullo, Plaintiffs allege only that each "sign[ed]" the citizen petitions, Am. Compl. ¶¶ 66-67.  Plaintiffs do not allege signing those petitions was beyond these individuals' normal job responsibilities.  And merely "signing" a document is a far cry from making corporate policy or "shaping corporate intentions," and thus not enough for individual liability.

Moreover, for citizen petitions, there are even stronger reasons for dismissal, because these petitions are intended to influence the government—and protected by the First Amendment.  Government petitioning can only be unlawful where the petition is both "subjective[ly]" and "objectively" "baseless."  *See Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 58-61 (1993).  To meet that standard, Plaintiffs would need to allege *each of the Individual Defendants* personally had sufficient information to conclude that, at the time of filing, the content of each petition lacked objective merit, and had no chance of success.  *See In re Wellbutrin XL Antitrust Litig.*, 2012 WL 1657734, at *24-26 (E.D. Pa. May 11, 2012).  But Plaintiffs' allegations of lack of merit are based on complex scientific and legal arguments.  Compl. ¶¶ 111-15.  Putting aside the knowledge of the company *as a whole*, there are no allegations Mr. van den Berg or Ms. Gullo *individually* had the relevant technical knowledge or legal background such that each would *personally* be in a position to know that the petitions (as Plaintiffs allege) had zero chance of success.  Certainly, Plaintiffs plead no facts to that effect, or that these

11

individuals had corporate authority to direct the filing of petitions that (supposedly) lacked objective merit. That requires dismissing all claims against Mr. van den Berg and Ms. Gullo. Moreover, Mr. van den Berg is only alleged to have signed the First Citizen Petition in 2015, three years before Plaintiff even submitted its drug for approval. Compl. ¶¶ 66, 90. Plaintiffs' claims against him must be dismissed for the additional reason that Plaintiffs cannot show his conduct had any impact on the final approval date of Sage's generic drug. *See* Omnibus Brief at 35.

*Mr. Jones and Mr. Warren.* Plaintiffs' allegations against Mr. Jones and Mr. Warren are even more deficient with respect to the citizen petitions. Neither signed the petitions; Plaintiffs allege only vaguely that they "took actions in favor of . . . submitting a series of sham citizen petitions." Compl. ¶¶ 64-65. These conclusory statements do not provide facts plausibly suggesting these individuals had any role in determining whether to file the petitions, or what arguments to make. And, similarly, there are no allegations Mr. Jones or Mr. Warren individually had sufficient scientific or regulatory expertise to know that the citizen petitions had (supposedly) zero chance of success.

Plaintiffs also allege that Mr. Jones and Mr. Warren "knowingly authorized and personally took actions in favor of the company entering agreements," that Plaintiffs believe had an exclusionary effect. *Id.* ¶¶ 64-65. But again, Plaintiffs fail to allege that entering those agreements was beyond the scope of these individuals'

ordinary responsibilities, or what role any of them allegedly had in directing the content of those agreements. In addition, there are business reasons—not anticompetitive—for why a pharmaceutical executive would want to enter into exclusive agreements. Exclusive agreements are often entered into for procompetitive reasons, because they offer "various economic benefits, such as assuring . . . the availability of supply and price stability." *Eisai*, 821 F.3d at 403; *see also ZF Meritor, L.L.C. v. Eaton Corp.*, 696 F.3d 254, 270 (3d Cir. 2012) ("Exclusive dealing agreements are often entered into for entirely procompetitive reasons."). As such, Plaintiffs' allegations do not identify any conduct by Mr. Jones or Mr. Warren that provides more than "equally balanced inferences of anticompetitive and pro-competitive activity," and Plaintiffs accordingly have not pled a claim of "active and knowing" participation by Mr. Jones and Mr. Warren in an antitrust violation. *Se. Milk Antitrust Litig.*, 801 F. Supp. 2d at 739.

## CONCLUSION

All claims against the Individual Defendants should be dismissed.

13


| | |
|---|---|
| Dated: January 10, 2023 | MCCARTER & ENGLISH, LLP |
| Of Counsel: | */s/ Daniel M. Silver* |
| | Daniel M. Silver (#4758) |
| Eric J. Stock (*pro hac vice*) | Alexandra M. Joyce (#6423) |
| Shireen A. Barday (*pro hac vice*) | Renaissance Centre |
| Nathan C. Strauss (*pro hac vice forthcoming*) | 405 N. King Street, 8th Floor |
| Joshua J. Obear (*pro hac vice*) | Wilmington, DE 19801 |
| GIBSON, DUNN & CRUTCHER LLP | (302) 984-6300 |
| 200 Park Avenue | dsilver@mccarter.com |
| New York, NY 10166-0193 | ajoyce@mccarter.com |
| (212) 351-2301 | |
| estock@gibsondunn.com | *Counsel for Defendants Paul* |
| sbarday@gibsondunn.com | *Breckinridge Jones, Sr., Herbert Lee* |
| nstrauss@gibsondunn.com | *Warren., Jr., Henry van den Berg,* |
| jobear@gibsondunn.com | *and Kristen L. Gullo* |