## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAGE CHEMICAL, INC. AND TRUPHARMA, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) C.A. No. 22-1302-CJB ) |
| SUPERNUS PHARMACEUTICALS, INC., *et al*., | ) **PUBLIC REDACTED VERSION** ) ) |
| Defendants. | ) ) ) ) |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS INDIVIDUAL DEFENDANTS PAUL
BRECKINRIDGE JONES, SR., HERBERT LEE WARREN, JR., HENRY
VAN DEN BERG, AND KRISTEN L. GULLO**

**OF COUNSEL:**

W. Gordon Dobie (*pro hac vice*)
**WINSTON & STRAWN LLP**
35 W Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Fax: (312) 558-5700
Email: WDobie@winston.com

Susannah P. Torpey (*pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Fax: (212) 294-4700
Email: STorpey@winston.com

**LANDIS RATH & COBB LLP**

*/s/ Rebecca L. Butcher*
Daniel B. Rath (No. 3022)
Rebecca L. Butcher (No. 3816)
Jennifer L. Cree (No. 5919)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
rath@lrclaw.com
butcher@lrclaw.com
cree@lrclaw.com

*Counsel for Plaintiffs Sage Chemical,
Inc. and TruPharma, LLC.*

Robert A. Julian
**BAKER & HOSTETLER LLP**
Transamerica Pyramid Center
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone: (415) 659-2600
Email: rjulian@bakerlaw.com

Dated: March 13, 2023

# **TABLE OF CONTENTS**

Page

STATEMENT OF PROCEEDINGS ........................................................................1

SUMMARY OF ARGUMENT ...............................................................................1

STATEMENT OF FACTS ......................................................................................2

ARGUMENT ..........................................................................................................4

I.      Defendants Are Subject to Personal Jurisdiction in Delaware ............4

        A.     Delaware's LLC and Officer Consent Statutes .........................4

        B.     Delaware's Long-Arm Statute .................................................6

        C.     Conspiracy Jurisdiction..........................................................9

        D.     Due Process...........................................................................10

II.     Venue Is Proper in the District of Delaware .....................................10

III.    The Complaint's Allegations Support Individual Liability ................12

CONCLUSION ......................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*,
 871 A.2d 428 (Del. 2005) ...................................................................................10

*Benerofe v. Cha*,
 1996 WL 535405 (Del. Ch. Sept. 12, 1996).........................................................8

*Bergjans Farm Dairy Co. v. Sanitary Milk Producers*,
 241 F. Supp. 476 (E.D. Mo. 1965) .....................................................................13

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985)...............................................................................................7

*Chase Bank USA N.A. v. Hess Kennedy Chartered LLC*,
 589 F. Supp. 2d 490 (D. Del. 2008).....................................................................9

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014)...............................................................................................7

*Deaktor v. Fox Grocery Co.*,
 332 F. Supp. 536 (W.D. Pa. 1971), *aff'd*, 475 F.2d 1112 (3d Cir.
 1973) ....................................................................................................................13

*Deutscher Tennis Bund v. ATP Tour, Inc.*,
 610 F.3d 820 (3d Cir. 2010) ...............................................................................13

*Donsco, Inc. v. Casper Corp.*,
 587 F.2d 602 (3d Cir. 1978) ...............................................................................13

*Fed. Trade Comm'n v. Shkreli*,
 581 F. Supp. 3d 579 (S.D.N.Y. 2022) .......................................................2, 12, 14

*Fed. Trade Comm'n v. Vyera Pharmaceuticals, LLC*,
 479 F. Supp. 3d 31 (S.D.N.Y. 2020) ...................................................................14

*In re First Solar, Inc.*,
 2013 WL 4051739 (D. Del. July 12, 2013) .........................................................11

*Hadley v. Shaffer*,
   2003 WL 21960406 (D. Del. Aug. 12, 2003) ........................................................6

*Hamilton Partners, L.P. v. Englund*,
   11 A.3d 1180 (Del. Ch. 2010) ...............................................................................8

*Hazout v. Tsang Mun Ting*,
   134 A.3d 274 (Del. 2016) ...........................................................................5, 8, 12

*Illumina, Inc. v. Guardant Health, Inc.*,
   2023 WL 1407716 (D. Del. Jan. 31, 2023) ...........................................................4

*Intell. Ventures I LLC v. Checkpoint Software Techs. Ltd.*,
   797 F. Supp. 2d 472 (D. Del. 2011) .....................................................................11

*Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*,
   449 A.2d 210 (Del. 1982) .......................................................................................9

*Lorain Journal Co. v. United States*,
   342 U.S. 143 (1951) .............................................................................................12

*Mallinckrodt, Inc. v. E-Z-Em Inc.*,
   670 F. Supp. 2d 349 (D. Del. 2009) .....................................................................11

*Marten v. Godwin*,
   499 F.3d 290 (3d Cir. 2007) ...................................................................................7

*Metro Storage Int'l LLC v. Harron*,
   2019 WL 3282613 (Del. Ch. July 19, 2019) ..........................................................5

*Miller Yacht Sales, Inc. v. Smith*,
   384 F.3d 93 (3d Cir. 2004) ......................................................................................6

*Mobil Oil Corp. v. Advanced Env't Recycling Techs., Inc.*,
   833 F. Supp. 437 (D. Del. 1993) ....................................................................6, 8, 9

*Murphy Tugboat Co. v. Shipowners & Merchs. Towboat Co.*,
   467 F. Supp. 841 (N.D. Cal. 1979) ......................................................................13

*In re Mushroom Direct Purchaser Antitrust Litig.*,
   2017 WL 895582 (E.D. Pa. Mar. 6, 2017) ...........................................................13

*NRG Barriers, Inc. v. Jelin*,
   1996 WL 377014 (Del. Ch. July 1, 1996) ............................................................6

*In re P3 Health Grp. Holdings, LLC*,
   282 A.3d 1054 (Del. Ch. 2022) ....................................................................5, 10

*Regeneron Pharm., Inc. v. Amgen Inc.*,
   2023 WL 1927544 (D. Del. Feb. 10, 2023) ......................................................10

*In re Se. Milk Antitrust Litig.*,
   555 F. Supp. 2d 934 (E.D. Tenn. 2008) ............................................................14

*Toys "R" US, Inc. v. Step Two, SA*,
   318 F. 3d 446 (3d Cir. 2003) ..............................................................................5

**Statutes**

6 Del. C. § 18-109(a) ..............................................................................................5

10 Del. C. §3104 ....................................................................................................6

10 Del. C. § 3114(b) ...............................................................................................5

28 U.S.C. § 1391(b)(2) .........................................................................................10

# TABLE OF ABBREVIATIONS

| Term | Abbreviation |
|---|---|
| First Amended Complaint | Complaint or ¶# |
| Exhibits to the First Amended Complaint | Compl.Ex.# |
| Exhibits to the concurrently filed Torpey Declaration supporting Plaintiffs' Oppositions to Defendants' Motions to Dismiss | Ex.# |
| Sage Chemical, Inc. | Sage |
| TruPharma, LLC | TruPharma |
| Supernus Pharmaceuticals, Inc. | Supernus |
| Britannia Pharmaceuticals Limited | Britannia |
| US WorldMeds Partners, LLC | USWM Partners |
| MDD US Operations, LLC (f/k/a US WorldMeds, LLC) | US WorldMeds |
| USWM, LLC | USWM, LLC |
| Paul Breckinridge Jones | Jones |
| Herbert Lee Warren, Jr. | Warren |
| Henry van den Berg | Berg |
| Kristen L. Gullo | Gullo |
| US WorldMeds Partners, LLC, MDD US Enterprises, LLC (f/k/a USWM Enterprises, LLC), MDD US Operations, LLC (f/k/a US WorldMeds, LLC), and USWM, LLC, Jones, Warren, Berg and Gullo | USWM |
| Motion to Dismiss Individual Defendants Paul Breckinridge Jones, Sr., Herbert Lee Warren, Jr., Henry Van Den Berg, and Kristen L. Gullo | IB |
| Opposition to Defendants US Worldmeds Partners, LLC and USWM, LLC's Motion to Dismiss | UBO |
| Opposition to Defendants' Omnibus Motion to Dismiss | OBO |
| Becton, Dickinson and Company | BD |

## STATEMENT OF PROCEEDINGS

Plaintiffs oppose Jones, Warren, Berg, and Gullo's (together, "Individual Defendants" or "Defendants") Motion to Dismiss, D.I. 54.

## SUMMARY OF ARGUMENT

1.    Individual Defendants—long-time officers and managers of Defendant Delaware LLCs—undertook inherently unlawful acts to suppress price competition and maintain the Apokyn monopoly by impeding generic competition throughout the United States, including by conspiring to deprive Plaintiffs of compatible pens needed to compete, restricting samples needed for FDA approval, and filing sham citizen petitions. *See* OBO25-41; BBO2-7. Aside from excluding Plaintiffs, including a Delaware corporation, from competition in Delaware, Defendants repeatedly raised their monopoly prices on a product they obviously knew they sold to pharmacies and patients in Delaware. *Infra* §I. The Complaint accordingly alleges that Defendants "*harmed consumers and Plaintiffs in Delaware*." ¶73 (emphasis added).

2.    To evade liability, Individual Defendants sold interests in Defendant Delaware entities to Supernus, a Delaware corporation, collecting hundreds of millions of dollars while creating *additional* Delaware LLCs through which they agreed with Supernus to divide unlawfully maintained monopoly profits on an ongoing basis in a contract consenting to Delaware jurisdiction. Defendants cannot

seek the protections of Delaware law while contending monopoly profits collected from the comfort of their Kentucky homes are out of Delaware's reach. *Infra* §I(B); UBO1-2.

3.      Defendants ignore Delaware's LLC and Officer consent statutes pursuant to which each Individual Defendant ***consented to the exercise of personal jurisdiction*** by accepting positions as officers and managers of Delaware LLCs. This alone is sufficient to establish jurisdiction in this Court. *Infra* §I(A).

4.      Defendants are also subject to jurisdiction under Delaware's long-arm statute and conspiracy jurisdiction principles. *Infra* §I(B).

5.      Finally, there is nothing exceptional about naming individuals as defendants for antitrust violations. Indeed, an executive recently was not only held individually liable but was further barred for life from participating in the pharmaceutical industry for a fraction of the conduct alleged here. *Infra* §III (discussing *Fed. Trade Comm'n v. Shkreli*, 581 F. Supp. 3d 579, 637 (S.D.N.Y. 2022)).

## STATEMENT OF FACTS

A summary of Defendants' anticompetitive conduct is set forth in Plaintiffs' Omnibus Opposition and incorporated by reference herein. OBO7-13.

Individual Defendants formed and manage Defendant USWM, LLC, US WorldMeds Partners (together, the "Reorganized Entities"), and their predecessor

US WorldMeds. Compl.Exs.A, D; ¶¶40-58. Jones and Warren serve as CEO and COO of USWM, LLC and USWM Partners and each had the same roles for US WorldMeds. ¶¶52-53, 64-65. Berg is Senior Vice President and Gullo is Vice President of Development and Regulatory Affairs at USWM, LLC and also had the same responsibilities for US WorldMeds. ¶¶52, 66-67.

In these capacities, Defendants committed overt acts in furtherance of their unlawful scheme to impede generic competition. Jones and Warren authorized US WorldMeds to enter an exclusionary agreement with BD, which is governed by Delaware law, and into agreements with distributors that restricted access to RLD cartridges and Apokyn pens. ¶¶64-65, 73. Berg and Gullo signed and submitted sham citizen petitions to delay FDA approval. ¶¶66-67. These acts harmed Plaintiffs and competition in Delaware, Delaware pharmacies, Delaware patients, and Delaware payors of pharmaceuticals. ¶¶73, 220-22.

Attempting to evade liability, Defendants sold interests in Defendant Delaware entities to Supernus (a Delaware corporation) and reorganized their retained business by creating additional Delaware LLCs through which they retain a financial interest in the ongoing exclusionary conduct. ¶¶45-46, 60; UBO4-6 (incorporated by reference herein). Among other continuing obligations, the Transition Services Agreement referenced in the Sales and Purchase Agreement ("SPA") demonstrates that the Reorganized Entities, undoubtedly through

Individual Defendants as "Transition Managers," agreed to ensure that "material contracts" were transitioned to Supernus. Ex.4, Schedule 5 at 3; UBO5. The Reorganized Entities, and thus Individual Defendants, also stand to gain millions of dollars in post-sale consideration of up to $230 million if they succeed in helping Supernus meet post-sale milestones. ¶60; Ex.4 at 27.

## **ARGUMENT**

### I.    **Defendants Are Subject to Personal Jurisdiction in Delaware**

Where there has been no evidentiary hearing, Plaintiffs "must only make a prima facie showing that personal jurisdiction exists." *Illumina, Inc. v. Guardant Health, Inc*., 2023 WL 1407716, at *14 (D. Del. Jan. 31, 2023). "First, the Court must consider whether there is a basis for exercising personal jurisdiction pursuant to Delaware law. Second, the Court must determine whether the exercise of jurisdiction comports with the defendant's right to due process." *Id*. (citations omitted).

This Court may exercise personal jurisdiction over Defendants on three separate bases—any one of which is sufficient to bring Defendants into a Delaware court.

### A.    *Delaware's LLC and Officer Consent Statutes*

Defendants fail to acknowledge Delaware's LLC and Officer consent statutes, which provide that a nonresident manager or officer of a Delaware LLC, by virtue of accepting their position, ***consents to the exercise of personal jurisdiction over***

*them in Delaware courts* in civil actions "involving or relating to the business of the [LLC] or a violation by the manager … of a duty to the [LLC]." 6 Del. C. § 18-109(a); *see also* 10 Del. C. § 3114(b); *Hazout v. Tsang Mun Ting*, 134 A.3d 274, 289-94 (Del. 2016)("By becoming a director and officer of a Delaware corporation, [the defendant] purposefully availed himself of … protections under our law."). The LLC manager statute alone provides jurisdiction over the Individual Defendants, who serve as senior managers of Defendant Delaware LLCs. ¶¶64-67 (Jones and Warren are officers and Berg and Gullo are vice presidents); *see also* ¶¶40-58; *In re P3 Health Grp. Holdings, LLC*, 282 A.3d 1054, 1069 (Del. Ch. 2022); *Metro Storage Int'l LLC v. Harron*, 2019 WL 3282613, at *11 (Del. Ch. July 19, 2019).

Individual Defendants may additionally qualify as "formal managers" pursuant to USWM's governing documents. *Metro Storage*, 2019 WL 3282613, at *5-6. Even if no LLC agreement exists, ███████████████████████████ would still be considered managers pursuant to § 18-402. *See id*. at *16 ("By default, a Delaware LLC has a member-managed governance structure."); D.I. 47; ¶¶1-2, 4, 42, 53. While these statutes are dispositive, if there were even a hint of a jurisdictional issue, dismissal would be inappropriate before discovery. *See, e.g.*, *Toys "R" US, Inc. v. Step Two, SA*, 318 F. 3d 446, 456 (3d Cir. 2003).

**B.      *Delaware's Long-Arm Statute***

This Court also has jurisdiction over Defendants under Delaware's long-arm statute. *See* 10 Del. C. §3104. Courts construe Delaware's long-arm statute "liberally, favoring the exercise of jurisdiction." *Mobil Oil Corp. v. Advanced Env't Recycling Techs., Inc.*, 833 F. Supp. 437, 444 (D. Del. 1993). Pursuant to Section (c)(1) of Delaware's statute, specific jurisdiction "can be asserted over a defendant on the basis of a single act related to the state, if the claim has its basis in the asserted transaction." *Hadley v. Shaffer*, 2003 WL 21960406, at *7 (D. Del. Aug. 12, 2003).

Despite all of their contacts, Defendants claim that there can be no jurisdiction because they purportedly have no "physical ties" to Delaware. But Delaware courts reject this argument. *Id*. at *9 (jurisdiction "not limited to a personal, physical presence within the borders of a state"). Rather, Delaware courts have repeatedly found that defendants' actions satisfy Section (c)(1) where they were shareholders in a Delaware corporation and entered into a contract governed by Delaware law that forms the basis of allegations in the lawsuit. *Id*. at *9; *NRG Barriers, Inc. v. Jelin*, 1996 WL 377014, at *3 (Del. Ch. July 1, 1996). This is precisely what Plaintiffs allege. ¶¶62, 73.

Defendants' argument that Delaware courts have refused to base personal jurisdiction solely on the existence of a choice of law provision ignores the breadth of Plaintiffs' allegations. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 99 (3d Cir.

2004)(courts must analyze "the totality of circumstances surrounding a contract"); ¶¶62-67, 73. As courts have recognized, a choice-of-law provision, combined with other factors, may reinforce a party's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985).

Defendants committed *numerous acts* related to Delaware in furtherance of their anticompetitive scheme. Defendants engaged in serial sham petitioning on behalf of US WorldMeds, a Delaware LLC. ¶¶58, 66-67. Defendants negotiated and entered into the exclusionary agreement with BD—which Defendants agreed would be governed by Delaware law. ¶73. And, under the SPA, Defendants maintain continued obligations and continue to receive monopoly profits through the Reorganized (Delaware) Entities and consented to "sole and exclusive jurisdiction" in Delaware. UBO4-6; Ex.4 at 43; ¶¶40-58. Defendants have thus purposefully availed themselves of the duties and protections of Delaware law.

Defendants' reliance on *Daimler* and *Marten* is misplaced. Plaintiff did not even assert specific jurisdiction in *Daimler AG v. Bauman*, a general jurisdiction case where the events took place in Argentina. 571 U.S. 117, 133, 142 (2014). In *Marten v. Godwin*, the court found, at summary judgment, that none of the defamatory statements were made or sent in the forum state. 499 F.3d 290, 298 (3d

Cir. 2007). In contrast, the Complaint alleges that Defendants' anticompetitive scheme "harmed consumers and Plaintiffs in Delaware." ¶73.

Defendants argue Plaintiffs failed to allege that Individual Defendants "purposefully directed" their activities at Delaware. IB4. However, this ignores Plaintiffs' allegations specific to each Individual Defendant's conduct affecting Delaware and its residents as well as the nationwide effect alleged on prices. *See, e.g.*, ¶¶62-67, 73, 229, 283; *infra* §§I(C)-(D); *Hamilton Partners, L.P. v. Englard*, 11 A.3d 1180, 1196 (Del. Ch. 2010)(non-resident defendant who voluntarily participates in conspiracy "with knowledge of its effects in the forum state … [has] purposefully availed himself of the privilege of conducting activities in the forum state"). Defendants cannot credibly contend that they did not know they were selling Apokyn to pharmacies and consumers in Delaware and blocking generic competition in the state. Thus, it was reasonably foreseeable that pharmacies, payers, and patients would be harmed by paying monopoly prices in Delaware. *See, e.g.*, ¶¶73, 223-45; 283; *Benerofe v. Cha*, 1996 WL 535405, at *4-5 (Del. Ch. Sept. 12, 1996).

Finally, Defendants' reliance on the fiduciary shield doctrine is misplaced. The Delaware Supreme Court has not adopted the doctrine, *see Hazout*, 134 A.3d at 289-94, and Delaware courts question its validity, *see Mobil Oil*, 833 F. Supp. at 441. In any event, Delaware courts are clear that the doctrine is not a bar to exercising personal jurisdiction. *Mobil Oil*, at 443. Rather, courts evaluate all

contacts in the forum, including those taken in an employee's fiduciary capacity. *Id*. at 443.

### C.    *Conspiracy Jurisdiction*

Even if the Court found the allegations specific to each Individual Defendant insufficient on their own, jurisdiction is further supported as a result of their participation in a conspiracy with: (1) Supernus to maintain and divide monopoly profits in the SPA, which "shall be governed by and construed in accordance with the law of Delaware" and pursuant to which the Parties "irrevocably and unconditionally consent[ ] to submit any dispute arising under or in connection with this Agreement … to the sole and exclusive jurisdiction of any state and federal courts located in the State of Delaware," Ex.4 at 43; and (2) with Britannia and BD to block Plaintiffs from compatible pens under a contract agreed to be construed in accordance with Delaware law. Compl.Ex.E at 3; *see Istituto Bancario Italiano SpA v. Hunter Eng'g Co*., 449 A.2d 210, 222-25 (Del. 1982).

As Delaware law recognizes, "if the purposeful act or acts of one conspirator are of a nature and quality that would subject the actor to the jurisdiction of the court, all of the conspirators are subject to the jurisdiction of the court." *Istituto*, 449 A.2d at 222; *see also Chase Bank USA N.A. v. Hess Kennedy Chartered LLC*, 589 F. Supp. 2d 490, 499-500 (D. Del. 2008). Notably, while the name of the individual who signed the SPA on behalf of "US WorldMeds Partners, LLC" is redacted, the title of

the signatory, "Chief Executive Officer," suggests it was Defendant Jones. Ex.4 at 45; Compl.Exs.A, D. Jones likely also executed the exclusionary agreement with Britannia and BD agreeing to be governed by Delaware law. Compl.Ex.E at 3. Having refused to produce unredacted agreements, competing inferences in Defendants' favor cannot be credited on their motion to dismiss. *See Regeneron Pharm., Inc. v. Amgen Inc.*, 2023 WL 1927544, at *4 (D. Del. Feb. 10, 2023).

### D.    Due Process

Defendants do not dispute that personal jurisdiction is consistent with due process. Plaintiffs have more than satisfied due process concerns here where Defendants accepted managerial positions with Delaware LLCs, engaged in anticompetitive conduct harming competition and maintaining supracompetitive prices in Delaware, and profited from agreements consenting to Delaware law and jurisdiction. *See* ¶¶6, 37, 42, 58, 66-67, 73. Delaware law is "inextricably bound up" in resolving this action, and Delaware has a strong interest in providing a forum for this action where resident consumers were harmed. *In re P3 Health*, 282 A.3d at 1072; *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 440 (Del. 2005).

## II.    Venue Is Proper in the District of Delaware

Venue in this Court is also proper because a "substantial part of the events … giving rise to [Plaintiffs' claims] occurred" in Delaware. 28 U.S.C. § 1391(b)(2);

¶¶64-67, 74. Defendants' claim that Plaintiffs have not alleged facts indicating that the conduct of each Defendant occurred in Delaware ignores Plaintiffs' allegations and the law. ¶¶71-74; *supra* §I.

Defendants' only cited case in support of their claim, *In re First Solar, Inc.*, which concluded that defendants could not have consented to the suit without a voluntary act, is inapposite. 2013 WL 4051739 at *1, n.1 (D. Del. July 12, 2013). Here, Defendants voluntarily undertook numerous unlawful acts, including entering into exclusionary agreements and filing sham petitions in furtherance of their anticompetitive scheme and voluntarily consented to be governed by Delaware law. ¶¶19-21, 58, 64-67, 71, 98.

Notably, no other Defendant has objected to jurisdiction or venue in this Court. Plaintiffs' choice of forum should therefore be afforded "significant deference," as five Defendants are Delaware residents and each participated in the anticompetitive scheme to injure Plaintiffs, including TruPharma, a Delaware corporation. *See Intell. Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 479-80 (D. Del. 2011); *Mallinckrodt, Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 356 (D. Del. 2009). "By authorizing jurisdiction over corporate fiduciaries … the General Assembly could be thought to have had an interest in conserving litigant and judicial resources by enabling plaintiffs to seek redress against the

11

corporation and the fiduciary for injuries in one [forum] for claims arising out of the same facts or occurrences." *Hazout*, 134 A.3d at 290.

## III.  The Complaint's Allegations Support Individual Liability

Defendants argue that the Complaint fails to support individual liability because Plaintiffs have not alleged a per se violation of the antitrust laws or "inherently wrongful conduct" on behalf of Individual Defendants, and that Plaintiffs have not met an "active and knowing" standard to hold each Defendant personally liable. Each argument is unavailing.

As an initial matter, Plaintiffs have alleged at least two per se unlawful theories of liability supporting their claims: (1) joint efforts by firms "to disadvantage competitors by … persuading or coercing suppliers or customers to deny relationships the competitors need in the competitive struggle," OBO27-30; and (2) per se unlawful tying, OBO18-25; ¶¶294-303.

Defendants are also mistaken that Plaintiffs must allege a per se violation to support individual liability. "An individual may be held liable under the Sherman Act to the extent that the individual has 'participated in violations of' the antitrust laws, such as by 'negotiating, voting for[,] or executing agreements which constituted steps in the progress of the conspiracy.'" *Shkreli*, 581 F. Supp. 3d at 637 (quoting *Hartford-Empire Co. v. United States*, 323 U.S. 386, 407 (1945)); *see Lorain Journal Co. v. United States*, 342 U.S. 143, 145 n.2 (1951)(officers and

12

directors "participated in the conduct alleged to constitute the attempt to monopolize"); *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978)(officer "cannot shield himself behind a corporation"); *Deaktor v. Fox Grocery Co.*, 332 F. Supp. 536 (W.D. Pa. 1971), *aff'd*, 475 F.2d 1112 (3d Cir. 1973)("Under the antitrust laws the liability of the participating officers of the offending corporation has long been established."); Ex.10.

Defendants' reliance on *Murphy Tugboat Co. v. Shipowners & Merchs. Towboat Co.* is misplaced. 467 F. Supp. 841 (N.D. Cal. 1979). First, Defendants fail to acknowledge the Third Circuit's sharp criticism of this out-of-circuit, district court decision. *Deutscher Tennis Bund v. ATP Tour, Inc.*, 610 F.3d 820, 833 n.8 (3d Cir. 2010); *In re Mushroom Direct Purchaser Antitrust Litig.*, 2017 WL 895582, at *5-6 (E.D. Pa. Mar. 6, 2017). If that were not enough, Defendants' argument is based on the mistaken premise that *Murphy Tugboat*'s "inherently wrongful" standard is limited to per se violations, despite the fact that the court considered "legitimate business considerations" and "all the surrounding facts and circumstances." 467 F. Supp. at 853; *see also Bergjans Farm Dairy Co. v. Sanitary Milk Producers*, 241 F. Supp. 476, 486 (E.D. Mo. 1965)(individual liability for attempted monopolization).

Regardless, the Complaint pleads facts plausibly supporting each Individual Defendant's active participation in inherently wrongful conduct alleged to violate the antitrust laws. Jones and Warren knowingly authorized US WorldMeds to enter

an exclusionary agreement with BD, ¶¶64-65, and Berg and Gullo signed US WorldMeds' serial sham petitions to impede generic competition. ¶¶66-67.[1] These allegations plausibly support each Defendant's active and knowing participation in the anticompetitive scheme, among other acts discussed above. *See Shkreli*, 581 F. Supp. 3d. at 637-38; *Fed. Trade Comm'n v. Vyera Pharmaceuticals, LLC*, 479 F. Supp. 3d 31, 50 (S.D.N.Y. 2020); *In re Se. Milk Antitrust Litig.*, 555 F. Supp. 2d 934, 949 (E.D. Tenn. 2008).

## CONCLUSION

For the foregoing reasons, Defendants' motion should be denied.

<u>**OF COUNSEL**</u>:

W. Gordon Dobie (*pro hac vice*)
**WINSTON & STRAWN LLP**
35 W Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Fax: (312) 558-5700
Email: WDobie@winston.com

Susannah P. Torpey (*pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Fax: (212) 294-4700
Email: STorpey@winston.com

**LANDIS RATH & COBB LLP**

*/s/ Rebecca L. Butcher*
Daniel B. Rath (No. 3022)
Rebecca L. Butcher (No. 3816)
Jennifer L. Cree (No. 5919)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
rath@lrclaw.com
butcher@lrclaw.com
cree@lrclaw.com

*Counsel for Plaintiffs Sage Chemical, Inc. and TruPharma, LLC.*

---

[1] Defendants claim that Berg and Gullo did not know the petitions had no chance of success, but the Complaint's allegations contradict this competing inference, which is a factual dispute that cannot be resolved at this stage. ¶¶142-143; OBO35-40.

Robert A. Julian
**BAKER & HOSTETLER LLP**
Transamerica Pyramid Center
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone: (415) 659-2600
Email: rjulian@bakerlaw.com

Dated: March 13, 2023

## CERTIFICATION OF WORD COUNT

The undersigned certifies that the foregoing document contains 2,998 words (exclusive of the cover page, table of contents, table of authorities, pictures, figures, illustrations, and signature block) counted using Microsoft Word's word count feature in compliance with the Stipulation and Order Extending Time to Respond to the Complaint and Setting Forth Briefing Schedule and Word-Count Limits, D.I. 31.

*/s/ Rebecca L. Butcher*
Rebecca L. Butcher (No. 3816)