# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAGE CHEMICAL, INC., *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> SUPERNUS PHARMACEUTICALS, ) <br> INC., *et al.*, ) <br> ) <br> Defendants. ) | Civil Action No. 22-1302-CJB |

Dominick T. Gattuso, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, DE; W. Gordon Dobie, WINSTON & STRAWN LLP, Chicago, IL; Susannah P. Torpey, WINSTON & STRAWN LLP, New York, NY; Robert A. Julian, BAKER & HOSTETLER LLP, San Francisco, CA, Attorneys for Plaintiffs.

Daniel M. Silver and Alexandra M. Joyce, MCCARTER & ENGLISH, LLP, Wilmington, DE; Erick J. Stock, Shireen A. Barday, Nathan C. Strauss and Joshua J. Obear, GIBSON DUNN & CRUTCHER LLP, New York, NY, Attorneys for Defendants Paul Breckinridge Jones, Herbert Lee Warren, Jr., Henry van den Berg and Kristen L. Gullo.

**MEMORANDUM OPINION**

May 31, 2024
Wilmington, Delaware

**BURKE, United States Magistrate Judge**

In this case, Plaintiffs Sage Chemical, Inc. ("Sage") and TruPharma, LLC ("TruPharma" and collectively with Sage, "Plaintiffs") bring antitrust-related claims against Defendants Supernus Pharmaceuticals, Inc. ("SPI"), MDD US Enterprises, LLC (f/k/a USWM Enterprises, LLC), MDD US Operations, LLC (f/k/a US WorldMeds, LLC), US WorldMeds Partners, LLC, USWM, LLC, Paul Breckinridge Jones, Herbert Lee Warren, Jr., Henry van den Berg, Kristen L. Gullo and Britannia Pharmaceuticals Limited.[1] Pending before the Court is a motion to dismiss filed by Individual Defendants Paul Breckinridge Jones, Herbert Lee Warren, Jr., Henry van den Berg, and Kristen L. Gullo, pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3) and 12(b)(6) (the "Motion"). (D.I. 54) For the reasons set forth below, the Court[2] GRANTS the Motion.

**I.  BACKGROUND**

**A.  Factual Background**

The Court hereby incorporates its summary of the general factual background of this case, which it set out in its May 9, 2024 Memorandum Opinion regarding Defendants' Omnibus Motion to Dismiss. (D.I. 376 at 2-6) Further information about these subjects relevant to the pending Motion will be discussed below.

---

[1] Defendants Jones, Warren, Jr., van den Berg and Gullo will be referred to collectively herein as the "Individual Defendants." Defendants US WorldMeds, LLC (pre-sale to SPI), USWM Enterprises, LLC (pre-sale to SPI), US WorldMeds Partners, LLC, USWM, LLC and the Individual Defendants may at times be referred to collectively herein as the "US WorldMeds Defendants." (*See* D.I. 16 at ¶ 56)

[2] On March 3, 2023, the parties jointly consented to the Court's jurisdiction to conduct all proceedings in this case, including trial, the entry of final judgment and all post-trial proceedings. (D.I. 78)

Plaintiff Sage, a pharmaceutical company "dedicated to developing and commercializing niche pharmaceutical products[,]" is a New Jersey corporation with its principal place of business in Hackensack, New Jersey. (D.I. 16 at ¶ 33) Plaintiff TruPharma, a pharmaceutical company that commercializes branded and generic prescription drugs for the United States market, is a Delaware limited liability company with its principal place of business in Tampa, Florida. (*Id.* at ¶ 34)

Jones formed US WorldMeds, LLC (now known as MDD US Operations, LLC) in 2001. (*Id.* at ¶ 41) US WorldMeds, LLC is a Delaware limited liability company; until 2020 its principal office was in Louisville, Kentucky, but now its principal place of business is located in Maryland. (*Id.*) On November 19, 2015, Jones and Warren formed USWM Enterprises, LLC (now known as MDD US Enterprises, LLC) as a Delaware limited liability company; USWM Enterprises, LLC was a parent company of US WorldMeds, LLC. (*Id.* at ¶ 42) USWM Enterprises, LLC had its headquarters in Kentucky until 2021, when it also changed its principal place of business to Maryland. (*Id.* at ¶ 43)

From 2015 through 2020, certain of the US WorldMeds Defendants managed the United States marketing of Apokyn, the prescription medicine at issue in this case. (*Id.* at ¶ 57) In March 2020, US WorldMeds Partners, LLC was formed to facilitate: (1) a restructuring of the US WorldMeds business; and (2) the sale of parts of USWM Enterprises, LLC, including the Apokyn product, to SPI, another pharmaceutical company. (*Id.* at ¶¶ 35, 44) US WorldMeds Partners, LLC is a Delaware limited liability company with headquarters in Kentucky. (*Id.* at ¶ 44)

SPI is a Delaware corporation with its principal place of business in Maryland. (*Id.* at ¶ 35) SPI entered into a Sale and Purchase Agreement ("SPA") with US WorldMeds Partners,

LLC in April 2020, which included the United States rights to Apokyn.  (*Id.* at ¶¶ 57, 60, 154)[3] At the time of the sale, the Individual Defendants had the following positions at US WorldMeds, LLC:  Jones was Chief Executive Officer; Warren was Chief Operating Officer; van den Berg was Senior Vice President and Gullo was Vice President of Development and Regulatory Affairs.  (*Id.* at ¶ 52)

The day after the parties entered into the SPA, the members of US WorldMeds, LLC formed USWM, LLC, a Delaware limited liability company with its headquarters in Kentucky; the Individual Defendants hold the same positions at USWM, LLC that they used to hold at US WorldMeds, LLC.  (*Id.* at ¶¶ 45, 46, 52, 60)  The FAC alleges that USWM, LLC was formed "in part to evade liability by claiming that this 'new' company is not liability for prior wrongful conduct while its members continue to have an ongoing and significant financial interest in the continuation" of Defendants' anticompetitive scheme.  (*Id.* at ¶ 46)

On June 9, 2020, SPI completed its acquisition of the outstanding equity of USWM Enterprises, LLC, including its interests in US WorldMeds, LLC as well as the United States rights to Apokyn.  (*Id.* at ¶¶ 44, 57, 154)  After the acquisition, US WorldMeds, LLC and USWM Enterprises, LLC changed their names to MDD US Operations, LLC and MDD US Enterprises, LLC, respectively.  (*Id.* at ¶ 43)  SPI, MDD US Operations, LLC and MDD US Enterprises, LLC now share the same corporate headquarters in Rockville, Maryland.  (*Id.*)  US WorldMeds Partners, LLC retains a substantial financial interest in Apokyn; pursuant to the SPA, it may receive up to $230 million dollars in contingent consideration based on the achievement of certain milestones, such as if Apokyn passes particular United States sales

---

[3]  The SPA provides that it should be governed by and construed in accordance with Delaware law.  (D.I. 87, ex. 4 at 43)

thresholds. (*Id.* at ¶ 60) The Individual Defendants continue to reside in Kentucky or elsewhere outside of Delaware. (D.I. 17, ex. D; *see also* D.I. 55 at 3) USWM, LLC continues to use the same website, logo, headquarters and products (aside from those products it had sold to SPI) as US WorldMeds, LLC did prior to being sold in 2020. (D.I. 16 at ¶¶ 47-48)

With respect to Jones and Warren, the FAC alleges that they: (1) knowingly authorized US WorldMeds, LLC to enter into an alleged exclusionary agreement (the "September 2019 Agreement") with Becton, Dickinson and Company ("BD"); (2) knowingly authorized and personally took actions in favor of US WorldMeds, LLC entering agreements with distributors that restricted access to RLD cartridges and Apokyn pens; and (3) knowingly authorized and personally took actions in favor of US WorldMeds, LLC submitting a series of relevant sham citizen petitions to the United States Food and Drug Administration ("FDA"). (*Id.* at ¶¶ 64-65) The September 2019 Agreement provides that it should be governed by and construed in accordance with Delaware law. (*Id.* at ¶¶ 37, 73)

The FAC further alleges that van den Berg personally signed US WorldMeds, LLC's first citizen petition, which was filed with the FDA in July 2015. (*Id.* at ¶¶ 66, 90) It also asserts that Gullo personally signed US WorldMeds, LLC's second and third citizen petitions, which were filed with the FDA on July 1, 2019 and December 23, 2019, respectively. (*Id.* at ¶ 67)

Additional relevant factual allegations will be discussed below in Section II.

B.   **Procedural Background**

Plaintiffs filed this action on October 3, 2022. (D.I. 2) On October 26, 2022, Plaintiffs filed the operative First Amended Complaint ("FAC"). (D.I. 16) Plaintiffs assert the following counts of the six-count FAC against, *inter alia*, the Individual Defendants:

- Count 1: Agreements that Unreasonably Restrain Trade, Violations of Section 1 of the Sherman Act, 15 U.S.C. § 1,

    Section 3 of the Clayton Act, 15 U.S.C. § 14, New Jersey
    Antitrust Act, N.J.S.A. 56:9-3, (*id.* at ¶¶ 285-93);

- Count 3: Monopolization and Attempted Monopolization in the Alternative, Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, New Jersey Antitrust Act, N.J.S.A. 56:9-4(a), (*id.* at ¶¶ 304-17); and

- Count 6: Tortious Interference With Prospective Economic Advantage, (*id.* at ¶¶ 328-35).

  On January 10, 2023, the Individual Defendants filed the instant Motion. (D.I. 54) The Motion was fully briefed as of April 12, 2023. (D.I. 101)

**II. DISCUSSION**

  With their Motion, the Individual Defendants argue that the FAC must be dismissed as to them for three reasons. First, they argue that the claims must be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2). (D.I. 55 at 3-6; D.I. 101 at 1-4) Second, they argue that venue is improper pursuant to Rule 12(b)(3). (D.I. 55 at 6-7; D.I. 101 at 4) Finally, they argue that the FAC's allegations fail to state a claim for individual liability under antitrust laws pursuant to Rule 12(b)(6). (D.I. 55 at 7-13; D.I. 101 at 4-7)

  At the outset, the Court easily dismisses the claims against van den Berg pursuant to Rule 12(b)(6). As to him, the only sufficiently specific allegation in the FAC is where it is alleged that he personally signed US WorldMeds, LLC's first citizen petition—a petition filed in July 2015, three years before Plaintiffs sought to enter the relevant market. (D.I. 16 at ¶¶ 58, 66, 89-90) Plaintiffs' briefing makes clear that this is the only act of van den Berg that is relevant to their allegations. (D.I. 85 at 3, 14) Importantly, Plaintiffs have acknowledged that they are not claiming any damages based on the filing of this first citizen petition. (D.I. 86 at 36 n.34) And Plaintiffs have not otherwise explained how their pleading could state a claim against van den Berg—i.e., in a circumstance like this one where Plaintiffs have acknowledged that they have no

claim for liability as to the only specific alleged bad act actually linked to this Defendant. (D.I. 101 at 2) Therefore, Plaintiffs fail to state a claim against van den Berg.

As for the other three Individual Defendants, for the reasons explained below, dismissal under Rule 12(b)(2) is appropriate.[4] Thus, the Court need address only the personal jurisdiction arguments as to these Defendants. In doing so, it will first set out the legal standards regarding a Rule 12(b)(2) challenge. Thereafter, it will address the merits of that challenge.

### A.  Legal Standard

Rule 12(b)(2) directs courts to dismiss a case when the court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). When a defendant moves to dismiss a lawsuit for lack of personal jurisdiction, the plaintiff bears the burden of showing the basis for jurisdiction. *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 369 (D. Del. 2008). In a case like this one, where a district court has not held an evidentiary hearing, the plaintiff must only make a *prima facie* showing that personal jurisdiction exists. *See Perlight Solar Co. Ltd. v. Perlight Sales N. Am. LLC*, C.A. No. 14-331-LPS, 2015 WL 5544966, at *2 (D. Del. Sept. 18, 2015); *Hardwire, LLC v. Zero Int'l, Inc.*, Civil Action No. 14-54-LPS-CJB, 2014 WL 5144610, at *5 (D. Del. Oct. 14, 2014). To do so, the plaintiff must establish with reasonable particularity sufficient contacts between the defendant and the forum state. *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). All factual inferences to be drawn from the pleadings, affidavits and exhibits must be drawn in the plaintiff's favor at this stage. *Hardwire*, 2014 WL 5144610, at *5 (citing cases); *Power Integrations*, 547 F. Supp. 2d at 369.

---

[4]  The Individual Defendants' Rule 12(b)(2) arguments were also made as to van den Berg, and the Court's rationale below would apply to him too.

In order to establish personal jurisdiction, a plaintiff typically must adduce facts sufficient to satisfy two requirements—one statutory and one constitutional. *Perlight Solar*, 2015 WL 5544966, at *2; *Hardwire*, 2014 WL 5144610, at *6. First, the Court must consider whether there is a basis for exercising personal jurisdiction pursuant to Delaware state law. *See Hardwire*, 2014 WL 5144610, at *6; *see also Power Integrations*, 547 F. Supp. 2d at 369. Second, the Court must determine whether the exercise of jurisdiction comports with the defendant's right to due process. *See Hardwire*, 2014 WL 5144610, at *6; *Power Integrations*, 547 F. Supp. 2d at 369 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Due process is satisfied where the court finds that "certain minimum contacts" exist between the defendant and the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citations omitted).

**B.     Discussion**

With the Motion, the Individual Defendants argue that because they live and work outside of Delaware, and did not engage in any conduct in Delaware, they are not subject to personal jurisdiction in Delaware. (D.I. 55 at 3-4) Plaintiffs, for their part, assert that this Court may exercise personal jurisdiction over the Individual Defendants on three independent bases: (1) Delaware's LLC and officer consent statutes; (2) Delaware's long-arm statute; and (3) conspiracy jurisdiction. (D.I. 85 at 4-10) For the reasons discussed below, Plaintiffs have not met their burden with respect to any of these three bases.

**1.     Delaware's LLC and officer consent statutes**

With regard to the statutory basis for jurisdiction, Plaintiffs first assert that this Court has personal jurisdiction over the Individual Defendants—who are senior managers of Delaware

8

limited liability companies—pursuant to Del. Code tit. 6, § 18-109(a) ("Section 18-109"), the Delaware LLC consent statute. (D.I. 85 at 4-5; *see also* D.I. 16 at ¶¶ 64-67)[5] The Individual Defendants do not seem to address whether Plaintiffs have pleaded a statutory basis for jurisdiction under Section 18-109. (D.I. 101 at 1-2) As such, for our purposes here, the Court will assume *arguendo* that they have.

But this would still leave the issue of whether Plaintiffs have pleaded sufficient minimum contacts between the Individual Defendants and Delaware so as to comport with due process. (*Id.*); *see, e.g.*, *Next Level Ventures, LLC v. AVID USA Techs. LLC*, C.A. No. 2022-0699-MTZ, 2023 WL 3141054, at *21 (Del. Ch. Mar. 16, 2023) ("Even if a claim falls within the plain meaning of Section 18-109, the defendant is not subject to personal jurisdiction unless the exercise of personal jurisdiction comports with due process."). The due process analysis "is particularly important for claims that do not relate to the LLC's internal affairs, which more readily support a due process analysis." *Id.* The due process inquiry asks "whether the nonresident defendant engaged in sufficient minimum contacts with Delaware to require it to defend itself in the courts of this State." *LVI Grp. Invs., LLC v. NCM Grp. Holdings, LLC*, C.A.

---

[5] Section 18-109 provides that "[a] manager . . . of a limited liability company may be served with process . . . in all civil actions . . . brought in the State of Delaware involving or relating to the business of the limited liability company or a violation by the manager . . . of a duty to the limited liability company[.]" Del. Code tit. 6, § 18-109(a); *see also Next Level Ventures, LLC v. AVID USA Techs. LLC*, C.A. No. 2022-0699-MTZ, 2023 WL 3141054, at *19 (Del. Ch. Mar. 16, 2023) ("Section 18-109 provides that managers of Delaware limited liability companies implicitly consent to personal jurisdiction in Delaware for certain claims."). Section 18-109 provides a basis for specific jurisdiction (not general jurisdiction). *In re P3 Health Grp. Holdings, LLC*, 285 A.3d 143, 152 (Del. Ch. 2022).

Plaintiffs also reference Delaware's officer consent statute, Del. C. tit. 10, § 3114(b) ("Section 3114(b)"), which similarly provides a statutory basis for personal jurisdiction over non-resident directors of Delaware corporations. (D.I. 85 at 4-5) The Court does not see how Section 3114(b) is facially applicable here, though it will cite to certain Section 3114(b) caselaw below by analogy.

No. 12067-VCG, 2018 WL 1559936, at *10 (Del. Ch. Mar. 28, 2018) (internal quotation marks and citation omitted); *see also Urvan v. AMMO, Inc.*, Consol. C.A. No. 2023-0470 PRW, 2024 WL 863688, at *14, *16 (Del. Ch. Feb. 27, 2024). Put slightly differently, "the nonresident defendant's contacts with the forum must rise to such a level that it should reasonably anticipate being required to defend itself in Delaware's courts." *LVI Grp. Invs., LLC*, 2018 WL 1559936, at *10 (internal quotation marks and citation omitted); *see also Next Level Ventures, LLC*, 2023 WL 3141054, at *21.

In some circumstances where Section 18-109 was the proffered statutory basis for jurisdiction, Delaware courts have found that due process was satisfied where: (1) "the allegations focused on the defendant's rights, duties, and obligations as the manager of a limited liability company," (2) "the matter was inextricably bound up in Delaware law," and (3) "Delaware has a strong interest in providing a forum for disputes relating to the actions of managers of a limited liability company formed under its law in discharging their managerial functions." *Next Level Ventures, LLC*, 2023 WL 3141054, at *21 (internal quotation marks and citation omitted). Otherwise, the traditional minimum contacts analysis can also be applied to assess the personal jurisdiction inquiry. *Id.*

Plaintiffs contend (in only about a half page of argument) that personal jurisdiction over the Individual Defendants is consistent with due process because those Defendants "accepted managerial positions with Delaware LLCs, engaged in anticompetitive conduct harming competition and maintaining supracompetitive prices in Delaware, and profited from agreements consenting to Delaware law and jurisdiction." (D.I. 85 at 10; *see also id.* at 3) They then argue that: (1) Delaware law is "inextricably bound up" in resolving this case; and (2) Delaware has a strong interest in providing a forum for this dispute, where resident consumers were harmed. (*Id.*

10

at 10) For their part, the Individual Defendants assert that the minimum contacts test is not met here; they argue this is so because while they have been sued for conduct that occurred during their employment at US WorldMeds, LLC, that entity's formation in Delaware does not bear any relation to the claims at issue (and because Delaware is not otherwise implicated in the allegations). (D.I. 101 at 1-2)

In the Court's view, exercising personal jurisdiction over the Individual Defendants would not comport with due process. This is because there are so few ties between the claims against the Individual Defendants and the State of Delaware.[6]

As an initial matter, although Plaintiffs argue that Delaware law is "inextricably bound up" in resolving the case, they do not explain how that is so. And facially, it is not clear to the Court *why* that could be so—as to a matter in which the state law claims at issue are brought pursuant to New Jersey law. (D.I. 16 at ¶¶ 285-93, 304-17, 328-35); *Ramco Asset Mgmt., LLC v. USA Rare Earth, LLC*, No. 2022-0665-SG, 2023 WL 6939263, at *5 n.41 (Del. Ch. Oct. 20, 2023) ("I fail to see how . . . claims [brought under the laws of New Jersey and Western Australia] could be linked, let alone inextricably, with the laws of Delaware.").

Moreover, there can be little doubt that the connections between Delaware and the Individual Defendants' relevant actions are otherwise thin. All of the parties here are either headquartered outside of Delaware or, in the case of the Individual Defendants, they all personally reside outside of Delaware. The Individual Defendants' conduct giving rise to the claims occurred outside of Delaware. And the claims are unconnected to the internal affairs of

---

[6] The Court incorporates by reference here its discussion of relevant caselaw relating to the due process issue in *Illumina, Inc. v. Guardant Health, Inc.*, Civil Action No. 22-334-GBW-CJB, 2023 WL 1407716, at *15-16 (D. Del. Jan. 31, 2023), a case that had to do with Delaware's officer consent statute.

the relevant Delaware entities. Nor are there any allegations that US WorldMeds, LLC was specifically formed in Delaware for the purpose of facilitating the alleged wrongdoing (which makes sense, since that entity was formed approximately 17 years before Sage filed its relevant Abbreviated New Drug Application). *See Illumina, Inc. v. Guardant Health, Inc.*, Civil Action No. 22-334-GBW-CJB, 2023 WL 1407716, at *16 (D. Del. Jan. 31, 2023).

Instead, here the only real connection between the claims at issue and Delaware are that: (1) certain of the parties are incorporated or were formed in Delaware; (2) the alleged conduct is said to have caused harm nationwide, including to consumers in Delaware (as well as to TruPharma, who is organized under Delaware law but not headquartered in the state); and (3) the September 2019 Agreement and the SPA include Delaware choice of law provisions. Relevant caselaw indicates that these types of minimal Delaware-based connections, without more, are insufficient to permit the conclusion that the Individual Defendants would have reasonably anticipated being haled into court in Delaware in a matter like this one. *See, e.g.*, *Turf Nation, Inc. v. UBU Sports, Inc.*, C.A. No.: N17C-01-271 EMD CCLD, 2017 WL 4535970, at *9 (Del. Super. Ct. Oct. 11, 2017) (finding that even though the requirements of Delaware's officer consent statute may have been satisfied, due process was not, where the plaintiff's claims: (1) were unconnected with the internal affairs or corporate governance of a Delaware corporation; (2) were brought under the laws of states other than Delaware; (3) involved conduct occurring outside of Delaware; (4) did not involve any assertion that the individual defendant "misused his position" at the corporation; and (5) were targeted to corporate defendants whose principal places of business were outside of Delaware); *see also Hazout v. Tsang Mun Ting*, 134 A.3d 274, 291 n.60 (Del. 2016) ("For example, if plaintiffs attempted to drag corporate officers and directors into Delaware by naming them as defendants in a products liability case where the

products had been designed and distributed from a state other than Delaware to diverse consumers, most of whom were in states other than Delaware, the minimum contacts test would provide substantial protection."); *Ramco Asset Mgmt., LLC*, 2023 WL 6939263, at *5 ("The contract and fraud claims [against an individual defendant] bear no relationship to the duties of managers, and do not involve the internal affairs of USARE. They cannot support imposing personal jurisdiction here over those legal claims, as a matter of due process.").[7]

---

[7] It is true, of course, as Plaintiffs note, that the relevant misconduct alleged involves actions taken by the Individual Defendants when they worked in their positions as managers for US WorldMeds, LLC, a Delaware entity. But even in cases implicating Delaware officer consent statutes where Delaware courts have found due process to be satisfied in part because the "alleged wrongs [we]re directly connected to [the defendants'] positions as Delaware officers and directors[,]" there has typically been more in the record to support personal jurisdiction than there is here. *Urvan*, 2024 WL 863688, at *16. For example, in *Urvan v. AMMO, Inc.,* Consol. C.A. 2023-0470 PRW, 2024 WL 863688, (Del. Ch. Feb. 27, 2024), the Delaware Court of Chancery found the due process prong of the personal jurisdiction inquiry to be satisfied where the wrongs at issue were undertaken by the individual defendants when they were acting as officers and directors of a Delaware corporation. *Id*. But in *Urvan*, the Court noted that there were also many additional substantive connections between the suit at issue and Delaware, including that: (1) the individual defendants had formed a new Delaware LLC in order to effect the very merger that was at issue in the case; (2) the target of that acquisition was a group of Delaware companies; and (3) the merger agreement at issue was Delaware-focused, as it was "laden with references to Delaware law and designate[d] Delaware as the applicable forum and source of law." *Id*.

Additionally, as is also noted above, Plaintiffs assert that the harm from the Individual Defendants' actions was ultimately felt nationwide, including in Delaware. (*See, e.g.*, D.I. 16 at ¶ 73) But in their briefing, the Individual Defendants responded by noting that such an allegation is insufficient to establish specific personal jurisdiction pursuant to the "effects test," in that there are no assertions in the FAC to the effect that these Defendants "'expressly aimed'" their conduct at Delaware or "'focused on'" Delaware. (D.I. 55 at 4-5 (quoting *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007)) (emphasis omitted)) To this, Plaintiffs responded only by stating that their allegations are that the Individual Defendants' conduct was "*affecting* Delaware and its residents" along with the rest of the nation—not that Delaware had been *targeted* here. (D.I. 85 at 8 (emphasis added)) And Plaintiffs cited to only one case in support of this argument—*Hamilton Partners, L.P. v. Englard*, 11 A.3d 1180, 1196-99 (Del. Ch. 2010)— but that case was not on point, as it dealt with an individual defendant who participated in the formation of a Delaware entity in order to facilitate the challenged transaction. *Id*. So in the end, Plaintiffs did not well explain how their allegation about the Delaware impact of the

13

The Court's decision is further bolstered by the fact that the main case that Plaintiffs rely on for support as to their due process argument—*In re P3 Health Grp. Holdings, LLC*, 282 A.3d 1054 (Del. Ch. 2022), (D.I. 85 at 10)—is clearly inapposite. In *In re P3*, the Delaware Court of Chancery noted that "when the action relates to a violation by the manager of a fiduciary duty owed to the LLC and its members, then the exercise of jurisdiction under Section 18-109 complies with due process"; the Court concluded that the case before it was an "easy case for the minimum contacts analysis" because the claims against the individual defendant "assert that she breached her fiduciary duties" when acting in the roles of general counsel and chief legal officer of a Delaware entity. 282 A.3d at 1072. Plaintiffs here do not allege that the Individual Defendants breached fiduciary duties owed to the LLC that they worked for. And so there can be no "easy" finding of minimum contacts like there was in *In re P3*.

In sum, Plaintiffs have not demonstrated that the Individual Defendants' contacts with Delaware are sufficient to make out a *prima facie* case that the due process prong of the personal jurisdiction analysis has been met. Therefore, Plaintiffs' first basis for personal jurisdiction fails.[8]

### 2. Delaware Long-arm Statute

Plaintiffs next argue that the Individual Defendants are subject to personal jurisdiction in Delaware under subsection (c)(1) of the Delaware long-arm statute. (D.I. 85 at 6) This

---

Individual Defendants' nationwide conduct could be enough to satisfy the due process prong here.

[8] Because Plaintiffs have failed to make out a *prima facie* case that the due process prong has been met, the Court could stop there, as such a showing would be relevant to (and would necessarily doom) Plaintiffs' bases for jurisdiction involving the Delaware long-arm statute and conspiracy jurisdiction. *See supra* at 8-9. However, the Court will set out below why Plaintiffs also fail to otherwise show how these bases for personal jurisdiction apply here.

subsection provides that a court may exercise personal jurisdiction over any nonresident who, *inter alia*, "[t]ransacts any business or performs any character of work or service in the State[.]" Del. Code tit. 10, § 3104(c)(1) ("Section 3104(c)(1)").[9]  This subsection of the long-arm statute is a specific jurisdiction provision, which requires that the cause of action arise from the defendant's conduct in the forum state. *Smith v. Tipsord*, Civ. No. 20-852-LPS, 2021 WL 4195791, at *3 (D. Del. Sept. 15, 2021); *Shoemaker v. McConnell*, 556 F. Supp. 2d 351, 354 (D. Del. 2008).

The briefing on this issue was not strong.  Plaintiffs barely mentioned Section 3104(c)(1) or its contents in their answering brief.  (D.I. 85 at 6)  And the Individual Defendants do not reference the statute at all in their reply brief.  (D.I. 101)

That said, Plaintiffs do (briefly) argue that Section 3104(c)(1) is met because the Individual Defendants "were shareholders in a Delaware corporation and entered into a contract governed by Delaware law that forms the basis of allegations in the lawsuit."  (D.I. 85 at 6)  In support, Plaintiffs point to the following two allegations in paragraphs 62 and 73 of the FAC:

> 62.  Certain or all of the individual defendants who were architects of the anticompetitive scheme and committed overt acts in furtherance thereof became owners and agents of Defendant US WorldMeds Partners, LLC.  Upon information and belief, these individual Defendants retained their personal liability for prior misconduct, and also continued to act as agents on behalf of Defendant US WorldMeds Partners, LLC to ensure receipt of payment for the sale of the prior US WorldMeds entities, including receipt of consideration that was contingent on the sales of the Apokyn® product following the transaction with Defendant Supernus. . . .
>
> 73.  The Court additionally has personal jurisdiction over the individual defendants by virtue of their intentional conduct

---

[9]     Delaware's long-arm statute "is to be broadly construed to confer jurisdiction to the maximum extent possible under the Due Process Clause." *Hercules Inc. v. Leu Tr. & Banking (Bah.) Ltd.*, 611 A.2d 476, 480 (Del. 1992).

> directing and/or participating in actions that restrained and excluded generic competition, increased prices, and harmed consumers and Plaintiffs in Delaware, including TruPharma, a company organized under Delaware law. Upon information and belief, Defendants Jones, Warren, van den Berg, and Gullo intentionally directed the US WorldMeds entities to restrain competition, including in part in the State of Delaware, by knowingly authorizing, exerting influence in favor of, and/or directing US WorldMeds, LLC to enter its exclusionary agreement with BD in 2019, which provides that the "agreement shall be governed by and construed in accordance with the internal laws of the state of Delaware." As such, the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

(*Id.* (citing D.I. 16 at ¶¶ 62, 73))

The Court first addresses this issue as to Gullo. Despite what paragraph 73 vaguely says on "information and belief" about her taking some action with regard to the September 2019 Agreement with BD, the FAC never concretely specifies what any such action might have been. (D.I. 55 at 6 (Defendants noting that the FAC does not specifically allege that Gullo had anything to do with the September 2019 Agreement)) Instead, as noted above, the only allegations in the FAC that clearly state that Gullo did something wrong relating to this case are those stating that she personally signed the second and third citizen petitions on behalf of US WorldMeds LLC. (D.I. 16 at ¶ 67) And in their briefing, Plaintiffs confirmed that the only factual allegation relating to Gullo relevant to the personal jurisdiction question is the assertion that Gullo signed those two citizen petitions. (D.I. 85 at 3 (in explaining how Gullo took actions that "harmed Plaintiffs and competition in Delaware[,]" Plaintiffs discussing only how "Gullo signed and submitted sham citizen petitions to delay FDA approval"); *cf. id.* at 13-14 (in discussing the "wrongful conduct" that Gullo engaged in as to the antitrust laws, Plaintiffs referencing only how she "signed US WorldMeds' serial sham petitions to impede generic competition")) But Plaintiffs fail to explain how the signing of those two petitions—petitions

16

that are not alleged to have been signed in Delaware, or to have been submitted to someone in Delaware, or to have made any reference to Delaware or its laws—could amount to transacting business in Delaware pursuant to the meaning of Section 3104(c)(1). *See Tolliver v. Qlarant Quality Sols., Inc.*, C.A. No. K21C-06-040 NEP, 2022 WL 17097602, at *7 (Del. Super. Ct. Nov. 21, 2022) ("Simply holding a position in a company that operates in Delaware is insufficient to establish jurisdiction under" Section 3104(c)(1).), *aff'd*, 297 A.3d 1084 (Del. 2023). And so the Court cannot conclude that Plaintiffs have sufficiently demonstrated personal jurisdiction as to Gullo under Section 3104(c)(1).

As for Jones and Warren, it is clear that Plaintiffs *are* asserting (e.g., via the allegations in paragraph 73 above) that the reason why Section 3104(c)(1) is satisfied is because of Jones and Warren's actions in authorizing US WorldMeds LLC to enter into the September 2019 Agreement. (*See* D.I. 16 at ¶¶ 64, 65) As was noted above, paragraph 73 says very little of substance as to what it is that Jones and/or Warren actually did on that front. But put that aside. Even assuming that there were specific-enough allegations that these two men in some way authorized US WorldMeds LLC to enter into this agreement, in the Court's view, that would not be enough to make out a *prima facie* showing that they "[t]ransact[ed] any business or perform[ed] any character of work or service" in Delaware. Del. Code tit. 10, § 3104(c)(1). In terms of Delaware-based ties to the allegations at issue, Plaintiffs seem to be placing heavy reliance on the fact that the September 2019 Agreement contains a Delaware choice-of-law provision. But that fact, standing alone, simply cannot be a sufficient basis on which to meet Section 3104(c)(1)'s requirements.[10] *See, e.g., Mobile Diagnostic Grp. Holdings, LLC v. Suer*,

---

10   Plaintiffs argue that "Delaware courts have repeatedly found that defendants' actions satisfy [Section 3104(c)(1)] where they were shareholders in a Delaware corporation and entered into a contract governed by Delaware law that forms the basis of allegations in the

17

972 A.2d 799, 805 (Del. Ch. 2009) ("It is . . . well established that a choice of Delaware law provision in a contract is not, of itself, a sufficient transaction of business in the State to confer jurisdiction under (c)(1)."); *Intellimark, Inc. v. Rowe*, No. Civ.A. 05C-01-086-PLA, 2005 WL 2739500, at *1-2 (Del. Super. Ct. Oct. 24, 2005) (rejecting the plaintiff's argument that personal jurisdiction pursuant to Section 3104(c)(1) existed, where the defendants, who were residents of California, signed a promissory note for $200,000 to a Delaware corporation, and where the contract at issue was "negotiated and executed exclusively in California, but contained a choice of law clause, designating the laws of Delaware as controlling the interpretation of the contractual terms"). Plaintiffs also suggest that a further basis for personal jurisdiction under Section 3104(c)(1) is that "under the SPA" Defendants "maintain continued obligations and continue to receive monopoly profits through" USWM, LLC and that they "consented to sole and exclusive jurisdiction in Delaware" pursuant to the SPA. (D.I. 85 at 7 (internal quotation marks and citation omitted)) But Plaintiffs' claims against the Individual Defendants do not arise out of the SPA. (*See* D.I. 101 at 4) And simply pointing to the existence of another

---

lawsuit." (D.I. 85 at 6) But the cases Plaintiffs cite to are distinguishable. In *NRG Barriers, Inc. v. Jelin*, No. 15013, 1996 WL 377014 (Del. Ch. July 1, 1996) (*cited in* (D.I. 85 at 6)), for example, the contract at issue was a stock purchase agreement, which contained a Delaware choice of law provision. 1996 WL 377014, at *2-3. But additionally, the relevant transaction was one wherein the defendants sold stock in a Delaware corporation ("NRG Barriers, Inc.") to a fellow shareholder and director of that same Delaware corporation. *Id*. Moreover, the defendants employed Delaware attorneys to negotiate the agreement at issue, and the agreement was consummated in Delaware. *Id*. at *3. In *Hadley v. Shaffer*, No. Civ.A. 99-144-JJF, 2003 WL 21960406 (D. Del. Aug. 12, 2003) (*cited in* (D.I. 85 at 6)), the individual defendants were shareholders who entered into a stock purchase agreement, one that would be enforced pursuant to Delaware law. *Id*. at *8. But in addition, both parties to the agreement were Delaware entities, and the stock being purchased was that of a Delaware corporation. *Id*. at *1, *5, *8.

Unlike the situation in *NRG Barriers* and/or *Hadley*, here there are no allegations that Delaware entities are contracting with each other to sell stock of a Delaware entity, nor that they are doing so via the work of Delaware attorneys, nor that the transaction was actually consummated in Delaware.

agreement with a Delaware choice of law provision in it (like the SPA) does not do enough to satisfy Section 3104(c)(1). *Cf. Herman v. BRP, Inc.*, C.A. No. N13C-11-105 CLS, 2015 WL 1733805, at *4 (Del. Super. Ct. Apr. 13, 2015) ("Thus, Kongsberg Holding merely entering three contracts with a Delaware corporation, which contain Delaware choice of law provisions, without more, is not sufficient to establish specific jurisdiction over Kongsberg Holding.").

For these reasons, the Court is not persuaded that Section 3104(c)(1) provides a basis for personal jurisdiction as to Jones or Warren as well.

### 3. Conspiracy Jurisdiction

Finally, Plaintiffs briefly assert (in only about one page of argument) that the Court has personal jurisdiction over the Individual Defendants pursuant to the conspiracy doctrine. (D.I. 85 at 9-10) With this doctrine, a court may exercise personal jurisdiction over non-residents based on the forum contacts of their co-conspirators. *Instituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 222 (Del. 1982). However, this theory requires the plaintiff to demonstrate, *inter alia*, that "a substantial act or substantial effect in furtherance of the conspiracy occurred" *in Delaware. Id.* at 225; *see also, e.g.*, *Altabef v. Neugarten*, Civil Action No. 2021-0117-MTZ, 2021 WL 5919459, at *8 (Del. Ch. Dec. 15, 2021) ("A conspiracy is not an independent jurisdictional hook: there must still be an anchoring Delaware act.").

Plaintiffs assert that conspiracy jurisdiction is supported as a result of the Individual Defendants' participation in a conspiracy with: (1) SPI to maintain and divide monopoly profits under the SPA, which contains Delaware choice-of-law and forum selection provisions; and (2) Britannia and BD, pursuant to the September 2019 Agreement, which states that the agreement shall be construed in accordance with Delaware law. (D.I. 85 at 9) But for reasons discussed above, the Court does not see (and Plaintiffs do not explain in their briefing) how the existence

19

of these choice of law or forum selection provisions in the SPA or September 2019 Agreement can amount to a "substantial act or substantial effect in furtherance of the conspiracy" actually occurring in Delaware. *In re Doehler Dry Ingredient Sols., LLC*., C.A. No. 2022-0354-LWW, 2022 WL 4281841, at *6 (Del. Ch. Sept. 15, 2022) (noting that the conspiracy theory of jurisdiction is narrowly and strictly construed, and that it "turns on the imputation to the [alleged] conspirator of meaningful activity on behalf of the conspiracy *which occurred and caused effects in Delaware*") (certain internal quotation marks and citation omitted, emphasis in original).

Thus, the conspiracy doctrine does not provide a basis for jurisdiction over the Individual Defendants.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion. An appropriate Order shall issue.

Because this Memorandum Opinion may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Opinion. Any such redacted version shall be submitted no later than **June 5, 2024** for review by the Court. It should be accompanied by a motion for redaction that shows that the presumption of public access to judicial records has been rebutted with respect to the proposed redacted material, by including a factually-detailed explanation as to how that material is the "kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Memorandum Opinion.